Judge Underwood,
delivered the opinion of the court.
On the 2nd of October, 1819, Helm filed his bill against Boone and Talbot, to compel them to surrender their legal title to so much land as was embraced in an entry made on the 3rd day of February, 1783, in the following words “Joseph Helm enters 1500 acres, on part of a military warrant, No. 1320, on the waters of Clear creek, adjoining Allen’s survey on the West, running North with his line, then West, then South to Boon’s pre-emption, then witn Helm’s line North, thence East to the beginning.” And upon which entry a survey was made on the 2?d of Sept. 1798, and a patent obtained, bearing date 13th May, 1799.
*352 The defendants,’in their answer, resist the validity of the complainant’s equity, based upon the said entry, by denying that it meets the requisites of the law, and insist upon the superiority of their title. In September, 1821, the court pronounced a decree sustaining Helm’s entry, and directing a survey thereof to be made, in accordance with the opinion of the court, so as to ascertain the metes and bounds of the land recovered by the complainant of the defendants, preparatory to the rendition of a final decree for a conveyance of their title- The defendants, by consent of the complainant, appealed to the court of Appeals from this decree. In September, 1822, Talbot moved the Circuit court to dismiss the appeal, and to permit him to file an additional or amendatory answer. He made oath that he believed the patent to Squire Boone for 1000 acres, (under which he and his brother defendant claimed,) dated 10th March, 1786, was on file among the papers of the cause at the time it was tried, that he labored under this mistake for a long time thereafter, that the other defendant lived at a considerable distance, and that the whole management of the cause devolved on him. The court sustained the motion made upon the affidavit, entered an order dismissing the appeal, granted a year before to the defendants, set aside the decree, and permitted the defendants to file an additional answer and exhibits. To this proceeding, on the part of the court, the complainant excepted. At the February term 1823, of the Circuit court, the complainant filed an opinion of the court of Appeals, shewing that the appeal prayed by Talbot and Brown in Sept. 1821, was dismissed, by the appellate court, because the transcript of the record had not been filed with their clerk within the time prescribed by law. It does not appear that the Circuit court took any notice of the dismissal of the appeal by the appellate court, further than to enter on record the opinion. The proceedings of the Circuit court seem not to have been influenced by it. The cause was heard in October, 1823, anda decree rendered, dismissing the complainant’s bill with costs, to reverse which, Helm prosecutes this writ of error.
The first question for consideration, grows out of the act of the Circuit court, in attempting to dismiss *353 the appeal one year after it had been granted, and to open the decree. If that decree should he regarded as final, there can be no doubt that the Circuit court erred in opening it at a subsequent term. appeal having been taken from it, if it was final, the appellate court could alone reverse or affirm it; and if it were merely interlocutory, an appeal having been taken by consent, shews the determination of the parties to refer the future decision of the controversy to the appellate court, and from necessity, the action of the circuit court would be suspended by the appeal, until the appellate court had disposed of it. There could not be a greater absurdity in judicial proceed-mgs,, than to have a cause progressing, at the same time, in the inferior and appellate tribunals of the country. Suppose Boone and Talbot had brought up their appeal, and this court had reversed the opinion appealed from, and directed a dismissal of the complainant’s bill with costs; would not such a mandate have been conclusive forever in their favor? It certainly would. If the Circuit court, after attempting to open the decree, had again decided in favor of Helm, would such decision have availed any thing against the opinion of the appellate court, directing the dismissal of his bill? Certainly not. If Boone and Talbot failed to take a transcript of the record, and lodge it in time, with the clerk of this court, but suffered their appeal to be dismissed, is the order dismissing his (their) appeal equivalent toan affirmance? Anappeal has the effeetto terminate the action of the inferior tribunal in the cause, until the appeal is disposed of. When it is disposed of by an affirmance, then the inferior tribunal is authorized to proceed and execute the decree. A dismissal of an appeal by the appellate court has the same effect. It authorizes the inferior court to proceed to execution. Therefore, as it regards all practicable purposes, a dismissal and an affirmance are equivalent. But notwithstanding they are the same as it regards the execution of the decree of the inferior court, there is still this important difference between them, an affirmance upon an appeal would be a bar to the prosecution of a writ of error, whereas, the dismissal of an appeal would not be.
A cause can-notb?inpro-inferior and superior court at tile same tIme‘
An appeal ^oHon o^tb59 fnferior0court ir. the case, until the apposed of.”" 1
Dismissal of joes noTbar the appellant from prosecu-gr“|ra writ 6f
The conclusion resulting from this reasoning, is, *354 that the cirouit court should have proceeded to the execution of thier decree of 1821, upon the filing of the mandate of this court dismissing the appeal.
But again, the interlocutory decree of 1821, as it is called, did effectually settle the rights of the parties, and settle the merits of the conflicting claims. In those respects its aspect and bearing was final. There was, it is true, something still for the court to superintend, preparatory to making a final disposition of the cause, and on that account, it may be said, that all the proceedings past, and to come, should be considered as in fieri) and subject to any modification or change which the court might think proper to make. If this were conceded to its fullest extent, had there been no agreement between the parties to prosecute an appeal from the interlocutory decree, yet under such an agreement, we conceive a very material change has been wrought in the condition of things. It is our opinion that the agreement rendered final, what otherwise might have been considered as in fieri. If the agreement does not have this operation, what effect can it have? It is good for nothing unless it amounts to this: “we abide and rest finally upon the decision of the circuit court, unless it shall be reversed by the court of Appeals.” That the agreement to prosecute the appeal was so understood by the parties there can be no doubt, for at the June term, 1822, “on motion of the complainant, (as the record states) and by consent of the defendants, the said defendants are restrained from the commission of wanton waste, and are restrained from selling and disposing of any timber upon the land in controversy until the determination ofthissuitin the court of Appeals, upon the appeal taken.”
Now how did Boone and Talbot rid themselves from the effects of their agreement relative to the prosecution of the appeal entered of record. One year thereafter they applied to the circuit court by motion, in the absence of, and without notice to Helm, to set it aside. We cannot recognize the notice given to the son of Helm as valid, although he is styled his agent in the bill of exceptions, because there is nothing upon which to justify a belief that his agency extended to the acceptance of such a notice for the fa *355 ther. How far his agency extended, and for what purposes it was constituted, is not definitely shewn. But it is not on this irregularity, and the apparent wrong in setting aside a decree or judgmeht in a man’s favor, without notice, a year after it was rendered, that we place our main objection to the legality of the proceeding. It is upon the want of power an the part of the circuit court to open the decree in the manner attempted, that we found our opposition. The decree in respect to the rights of the litigants was rendered final by their agreement, so far as the circuit court was concerned, and being so, that court had no more power to open it, for the purpose of letting in new matter, or to bring in a paper which was supposed to have been filed upon the affidavit of the defendants or either of them, than it would have had to set aside a judgment at law, and to grant a new trial a year after, upon a suggestion made on oath, that the bill of exceptions did not set out a paper which the defendants supposed had been used on the trial, but which in fact never had been so used.
The case of Jameson, & Co. vs. Mosely, IV. Monroe, 415, shews that when an appeal is- taken by consent from an interlocutory decree, and that decree affirmed by this court, it is no longer within the power of the inferior tribunal, and that nothing remains to be done but to carry it into effect. So in this case, when this court dismissed the appeal and the mandate returned to the circuit court, it should have effectuated its former decree, without regard to the new matter which had been brought before the court by the supplemental answer. There seems to us also, to be something improper, even if ihe circuit court had the power to open its decree, in its exercise after the lapse of a year, during which Helm had a right to consider the cause transferred to the appellate court. If the appeal had not been taken by consent at the time it was, then ihe survey therein required, would in all probability, and according to regular proceeding, have been made previous to the next ensuing term, at which a final decree W'ould have been rendened. Had this been done, there is no pretext for tolerating the idea, that the circuit court could thereafter, upon the affidavit of Talbot, opened the decree. The agreement in relation to *356 the prosecution of the appeal, suspended the execu-*'011 surveJ) an(^ the steps contemplated by the interlocutory decree; and this being the result of the yielded by Boone and Talbot they should not thereafter be permitted to prejudice Helm on an es-parte affidavit, when it is manifest, if no agreement bad been made, the decree must have been rendered final by the regular course of proceeding in the circuit court, before the term at which the court undertook to open the decree.
Petition fora re-heaving.
Crittenden, for plaintiff; Denny and Talbot, for defendants.
From the view of the case we have taken, we cannot resist the conviction that the decree of Sept. 1821, under all the circumstances, is final; and that the parties are bound to abide by it. This supersedes the necessity of investigating the merits of the complainant’s entry.
Wherefore, the decree of the circuit court, rendered at their October term, 1823, is reversed and set aside, and the cause remanded, with directions to proceed upon the decree of Sept. 1821. Whether the defendants will have any remedy by writ of error or appeal, after the circuit court shall have finally disposed of the cause, need not now be enquired into.
The appellant must recover his costs.